is Orchard Hill Building Company v. United States Army Corps of Engineers. Mr. Hadzi Antic for Orchard Hill. Good morning. Theodore Hadzi Antic for Orchard Hill Building Company, doing business as Gallagher and Henry. May it please the Court. The case presents an overarching threshold question. To what extent should this Court provide deference to federal assertions of jurisdiction under the Clean Water Act? That question was answered by the Supreme Court in three relatively recent cases, Swank in 2001, Rapanos in 2006, and Hawks in 2016. Those three cases stand for the proposition that the Clean Water Act pushes the outer boundaries of federal power under the Commerce Clause and the federalism structure of government established by the Founding Fathers, and that accordingly, federal assertions of Clean Water Act jurisdiction are not entitled to broad deference. That's not quite what Rapanos says, right? I mean, are you disputing that Justice Kennedy's concurrence is the controlling standard? And since Justice Kennedy's concurrence and the plurality in that case, with an eye towards the federalism concerns and Commerce Clause power that you're identifying, narrowed the interpretation of the statute from the one that the Court initially asserted, why wouldn't this just be arbitrary and capricious review if we apply the standard announced by Justice Kennedy and Rapanos, which is what this circuit has adopted as controlling? Well, you're correct that the controlling standard in the Seventh Circuit is Justice Kennedy's concurrence, but Justice Kennedy's concurrence echoes Swank's statements regarding the pushing of the outer boundaries of federal jurisdiction under the Clean Water Act with regard to the Commerce Clause and federalism concerns. Justice Kennedy specifically gives a nod to the Swank standard at 531 U.S. 174. So he did adopt that, and in 2016, the Supreme Court, in Justice Kennedy's concurring opinion, said essentially the same thing. Justice Kennedy said the Clean Water Act's, quote, regarding the government's power to cast doubt on the full use and enjoyment of private property throughout the nation. But what I don't understand is I thought that the solution to that problem was Justice Kennedy's test, which interpreted navigable water and wetland more narrowly than the Court initially proposed. So that's what handled the federalism concern. I did not read Rapanos as being an effort to alter the standard of review under the APA. Your Honor, it doesn't alter the standard of review, but what Justice Kennedy did in Rapanos is in order to skirt, if you will, the constitutional issues, he provided six pages of instructions to the Corps of Engineers as to how they must perform jurisdictional determinations. Those six pages of instructions become the law of the case for purposes of the APA. And to the extent that the Corps of Engineers didn't follow those instructions, then it didn't act in accordance with law. So it would be arbitrary and capricious. Well, there are three standards under the APA that are relevant here, arbitrary, capricious, or not in accordance with law. The APA says or, not in accordance with law. Here we're saying that because the instructions weren't followed and weren't followed closely, that the Corps' jurisdictional determination was not in accordance with law. Although here it doesn't seem to me like that makes a functional difference. If it's arbitrary and capricious, it's not in accordance with law, and basically it all boils down to your same question, which is whether the Corps' analysis of this parcel was backed by the kinds of evidence showing that it had a significant nexus and satisfied Justice Kennedy's test. I would say, Your Honor, that it does make a difference. In Rapanos, it was because of the constitutional concerns that Justice Kennedy provided those detailed instructions in six pages. And I want to just cover what those instructions were and then compare that to what the Corps actually did here. So Justice Kennedy instructed that jurisdictional determinations have to be made case by case. Mere adjacency of a wetland is not enough to establish jurisdiction. Mere hydrologic connection of a wetland to a tributary is not enough to establish jurisdiction. More specific inquiry is necessary. And specifically, some measure of hydrologic significance to navigable water quality, including, crucially, the quantity and regularity of flow, must be established. Speculation isn't enough. Okay, but counsel, I don't want you to eat up your time because I also have questions about your second issue. Again, I understand what Justice Kennedy's opinion said, but this is about applying that opinion and the standards Justice Kennedy sent out to what the Corps actually did here, and the question being whether it was arbitrary and capricious or, as you'll have it, not in accordance with law. It's also just a question of was there evidence to support the Corps' determination and did they rationally explain it, right? Are you disputing that that's what we're looking for here? What I'm saying, Your Honor, is because of the constitutional concerns, the law of the case is Justice Kennedy's six pages of instructions to the Corps. If the Corps didn't follow those instructions, then the Corps didn't perform its jurisdictional determination in accordance with the law. That's all I'm saying. But don't we look at whether or not they followed those instructions under an arbitrary and capricious standard? Because it's under the APA, which requires the deference. If it were a case where Justice Kennedy had not brought in the constitutional issues and had not specifically provided instructions based on those constitutional concerns, yes, then it would be a straight arbitrary and capricious standard. But that's not the case here. Those instructions were given because of the outward boundary push of the Clean Water Act itself under the commerce, cause, and federalism principles. So to be clear, then you're saying that Rapanos carves out an exception, and because it identifies these constitutional concerns about the boundaries of federal power, that it is unique in taking this kind of case outside of arbitrary and capricious review because Justice Kennedy's opinion instructs that. Is that your position? No, Your Honor, I'm not saying that. What I'm saying is that given the instructions, the detailed instructions, that to the extent the Corps did not follow those instructions, the law of the case hasn't been met, hasn't been achieved. But they don't check each one of the boxes set out in Justice Kennedy's opinion. It automatically fails. We don't even look at the evidence that they otherwise had, that it's almost a procedural error. No, absolutely we need to look at the evidence, and I'd like to get into what that evidence is. Well, let me actually focus you quickly on this legislative rule because I have a number of questions about that. Is it your position in the preamble that this five-year abandonment provision is a legislative rule and its flaws that it did not go through notice and comment? No. Your Honor, I'm not sure I necessarily understood the question, but the prior converted cropland exemption, which you're referring to now, is absolute on its face. In the text of the regulation itself? In the text of the regulation. It's absolute on its face. The only place where abandonment comes in is in the preamble itself. Yes. But for the statements in the preamble, there's a categorical exclusion for prior converted cropland. But the court could have put that abandonment, that five-year abandonment exclusion, from the exemption in the text of the rule if it had gone through notice and comment. It seems to me that one of the issues here is that this is not an interpretive rule. You know, because of the hard line that it draws and the substantive rights that it changes, so that if it's a legislative rule, it can't just appear in the preamble. It would have had to go through notice and comment. And that's what I'm trying to understand your challenge. I couldn't quite get what your position was about why this was invalid. Yes, Your Honor. I agree with what you just said. Okay. So you think it was a legislative rule that should have gone through notice and comment. Because it's laying down, as you point out in your brief, it can't be interpreting what prior converted croplands are because it would be, as in the Hochter case, kind of straining. I mean, really, that's kind of your point about Brock, right? When you cite Brock, you're saying if it's not in the text of the regulation, then it's not a regulation. It should have gone through notice and comment. I think that's precisely right. And as a matter of fact, in the regulatory history, if you will, there was originally a reference to a manual of the Department of Agriculture which included an abandonment exception. But based on the comments received, that that reference manual had not gone through notice and comment itself, that it can't be referenced in the body of the regulation. And so consequently in the final rule, that reference was taken out and the categorical exemption stays as it is. So it's popped into the preamble, this cross-reference, but not in the regulation itself. So what is the remedy that you would want? Assuming that we agree with that position and we say, yes, this is a legislative rule and it shouldn't have been in the preamble, what's the remedy? Is this subject to harmless error review? There was no harmless error here because the regulated public should be able to rely on the unambiguous text of the Code of Federal Regulations. And here there's no ambiguity that prior converted croplands are categorically excluded from Clean Water Act jurisdiction. Well, I understand that, but the Supreme Court has said that not every error, not every failure to put a rule through notice and comment is automatically reason to vacate that it can be subject to harmless error review. So I'm asking which category this would fall in. Would this be subject to harmless error review or not? No, no, it would not be subject to harmless error. Here the D.C. Circuit in the Brock case, which has been followed by numerous other courts and set forth in the briefing, basically said that if it's not in the language of the CFR but only in the preamble, it's not binding. Not only is it not binding on third parties, it's not even binding on the government. That's what the Brock case said. And numerous other courts have followed that decision. I understand that, but there is, and I think you should look at it, I think I might ask for a supplemental briefing on this question because I think it's a difficult one. I mean, I understand what you're saying, but that goes to whether there was an error. It doesn't go to what the remedy should be. For example, it's not necessarily the case that we should vacate it. It's possible that we should just remand it to the agency. And so what's your view about that? Would remand or vacate be appropriate here if the rule is invalid? Well, I think vacater would be appropriate with regard to the district court's ruling should be vacated, should be reversed. But with regard to the regulation, I don't see any reason to remand it. It's clear on its face. It's unambiguous. Regardless of what the intent may have been, Orchard Hill should be able to rely on the language of the CFR as a third party. That's not harmless error for Orchard Hill. It believed that it had prior converted cropland. That's why it expended hundreds of thousands of dollars to get permits for the entire 100-acre Warmke parcel and to build out 165 units, which they sold. And then in the process, a drainage tile broke. What if we find that that prior converted cropland is ambiguous? Is the agency then entitled to deference? And would your answer change on the harmless error? Your Honor, on its face, it's not ambiguous. But if you were to find that it's ambiguous, I would say that it's not entitled to broad deference. And the reason it's not entitled to broad deference was what we were talking about in terms of Justice Kennedy's opinion. Would it be entitled to some deference, Skidmore deference, or some other lesser than Chevron deference? Well, Chevron deference I don't think would be an issue. I think the question is whether it's entitled to our deference. And I don't think it would be entitled to our deference because the Clean Water Act pushes the constitutional boundaries. And here what you'd be doing is you'd be inserting language in the regulations that's not there now. Like the government argued in its brief, well, prior converted cropland is categorically excluded, but it doesn't say all or any prior converted cropland. The Supreme Court has never sanctioned that kind of insertion in unambiguous language in a regulation. And if we find that prior converted cropland is ambiguous, would that change your answer to the harmless air analysis? No, it wouldn't change the answer because the umbrella of constitutional doubt over the entire Clean Water Act applies not only to significant nexus but also to prior converted cropland. And it's up to the agency to say what it means in a regulation, and that's what the agency did here. Didn't Justice say in his concurring opinion in Rapinos that his restricted test that he was giving, especially with respect to wetlands, really took away the constitutional concerns that you're raising? He skirted the constitutional issue. Didn't he specifically say, though, that he was not as concerned about it because of the restricted test that he had imposed a significant nexus? Yes, assuming that the Corps of Engineers in the future, post-Rapinos, would follow his specific instructions. That allayed his concern. The question here is, did they follow the instructions? And if I may, I'd like to just briefly mention in the time remaining what the Corps did. So here, just take a look at the physical geography. You've got the 13 acres and then Midlothian Creek, which is a tributary of the Little Calumet River located 11 miles away. So the issue is, what is the nexus between the 13 acres and the Little Calumet River, the nearest navigable water? So between the 13 acres and Midlothian Creek, the tributary, you've got man-made and natural ditches, culverts, underground pipes, stormwater retention basins. You've got the entire length, almost, of Midlothian Creek and then numerous properties in between. So for a drop of water to travel from the 13 acres to the Little Calumet River, it needs to traverse that gauntlet of natural and man-made barriers. And what did the Corps do in terms of presenting evidence? Well, the Corps didn't measure the extent, the content, or the frequency of flow at or from the 13 acres. The evidence of flow gathered by the Corps with regard to physical and chemical nexus, there's one point of evidence, and that is a one-time eyeball observation made on March 24, 2010, with a notation that flow at that time was intermittent from the Warm Key Parcel stormwater retention system outfall into Midlothian Creek. That's it. There's no measurement of flow into Midlothian Creek, no sampling and analysis of the chemical parameters of the flow, and there's no sampling and analysis of the 13 acres. The Corps' own appellate review officer on appeal said, that's not enough to establish physical and chemical nexus. I need a better explanation. So the Corps came up with an 11-page supplement, and what does the supplement add with regard to the physical nexus issue? Nothing. Nothing with regard to the 13 acres or the Warm Key Parcel or the outfall into Midlothian Creek. There was still no measurement of quantity or regulation of flow. What the supplement did was relied on studies of unrelated wetlands as far afield as the Netherlands to hypothesize that the 13 acres have the ability to filter pollutants. That's the entire basis of the evidence upon which the Corps claims a significant physical and chemical nexus. Such a lack of site-specific evidence on physical and chemical nexus is precisely what led Justice Kennedy to deny deference to the Corps' jurisdictional determination in Rapanos. That leaves biological nexus. And, Your Honor, I see that I'm running up against my two minutes that I've reserved, so I will do that. Thank you, Counsel. Ms. Hanson-Young? Good morning, Your Honors. May it please the Court, my name is Tekla Hanson-Young and I represent the Army Corps of Engineers. I'd like to first start out by emphasizing that this Court reviews the Army Corps' decision under the arbitrary and capricious standard of review set forth in the APA, and that means that this Court must defer to the Corps' scientific expertise that it applied when determining, after conducting a site-specific evaluation of these wetlands, that these wetlands have a significant nexus to the Midlothian Creek, which in turn is a tributary of a navigable water, the Little Calumet River. Counsel, what about your opponent's argument that Justice Kennedy's opinion in Rapanos somehow changes this? It does not change the APA. It very clearly described that it set forth a standard that the Corps should apply on a case-by-case basis when evaluating whether wetlands have a significant nexus to navigable waters. And, yes, it set forth a legal standard, but it in no way altered the standard of review that is set forth in the APA. And are you arguing for the standard of deference in the APA on the significant nexus question, or are you arguing for something more? We are arguing for the standard of review set forth in the APA. Arbitrary and capricious? Arbitrary and capricious. Well, both, Your Honor, actually. So substantial evidence applies to this Court's review of the facts that the Army Corps found, and whether there was enough evidence that a reasonable mind might agree that the evidence supports the conclusion. So there could be conflicting evidence in the record, but if there's enough evidence to support the Army Corps' conclusion that there's a significant nexus and that the facts exist to support the significant nexus, for example, that there's a hydrological connection, that these wetlands contribute to flood control benefits for navigable waters, those sorts of things, if there's enough evidence in the record that a reasonable mind might agree that those facts or evidence support the conclusion, this Court should defer. And this Court should also afford the Army Corps' scientific judgment a higher level of deference because then it might apply to facts that weren't particularly technical or scientific because of the Army Corps' unique expertise in applying the statute here. Counsel, let me talk to you about the prior converted cop lands exception. So I gather the thrust of your brief is that you think that the preamble and the five-year abandonment exception is an interpretive rule? Yes, that's correct, Your Honor. I hesitate to characterize it as interpretive versus legislative because I'm not 100% sure how you mean those terms, but what I would like to explain more specifically, I think it would be legislative. Then why did they go through? I apologize, interpretive. And that's based on the text of the preamble itself. So in the proposed rule, but let me just back it up. It's interpretive, but it was also subject to notice and comment because in the proposed regulation, which is included in the addendum to the brief at page 32, the Army Corps specifically explained that it would be defining prior converted crop lands with the abandonment concept attached to it. So in other words, prior converted crop lands has no meaning on its own, and so when the Corps was proposing the regulations initially, it did say prior converted crop lands will be exempt. Well, if you're interpreting the phrase prior converted crop lands, it seems to me that it would be an interpretation to say what's a crop land. It would be an interpretation to say this is what it means for it to have been converted. My problem with the five-year limitation is it's like this court's decision in Hochter where Judge Posner said if you're going to pick a line like an eight-foot high fence, then you're changing substantive rights. You're laying down a rule that would be legislative. And so here, I mean, you're picking a number. It's hard to see how five-year abandonment in any way interprets what it means to have prior converted crop lands. And it seems to me that what you're saying about it having gone through notice and comment really goes more towards harmless error than to whether this legislative rule should have gone through notice and comment itself. There's a lot in your question. Just backing up to the truth. Okay, how about we back up? Just explain to me why you think it's interpretive and not legislative. It's interpretive because if you look at the preamble to both the proposed regulation and the final regulation, the Corps clearly explained that it removed the definition. So in the final regulation, it explained that it removed the definition of prior converted crop land so that it could retain discretion to update its regulation or its interpretation of the word in a way that would be consistent with the Department of Agriculture's manual. So you think that this five-year abandonment can fairly be— what does it interpret in the phrase prior converted crop land? It actually is a component of the meaning of prior converted crop land. So— Why not six years then? I mean, it's a line drawing. And how do you distinguish that from Judge Posner's opinion in Hockner? I'm not prepared to speak about Hockner, but I'm happy to submit a 28J letter on it to distinguish it if this Court would permit. But I would say that the line drawing is rational and reasonable here because it was directly imported from the U.S. Department of Agriculture's interpretation of prior converted crop land. Well, I don't think it—I'm not saying that it's irrational. All I'm saying is that the APA requires legislative rules, rules that change substantive rights, rules that lay down lines like this one to go through notice and comment. And this is not part of the regulation. It's in the preamble. So I'm wondering why it didn't go through notice and comment. And if it is a legislative rule that did not go through notice and comment, then we confront the question of whether it's subject to harmless error review and what the remedy should be. Should it be vacated and remanded? Reverse the district court with instructions to vacate and remand to the agency or whether it should not be vacated. It should just be remanded to the agency. That's my set of concerns. And you argue in your brief that the public did have the opportunity to comment on it. Yes. So can you explain that in answering the question? Sure. And that is exactly what I was going to say. I was going to say respectfully, Your Honor, I don't think this court needs to address whether it's legislative or interpretive because either way it went through notice and comment. And I would direct the court to look at addendum page 32, and the citation specifically is 57 Federal Register 26897, where the court in its proposed rule explained how it would interpret the term prior converted cropland and explained that it would import the abandonment concept into that definition of prior converted cropland. And then, again, that proposed regulation went through notice and comment. The public commented on the meaning of prior converted cropland and in particular the abandonment concept. And we can see that reflected in the final regulation, in the preamble to the final regulation, which is at page 62 of the addendum. But didn't it pull, didn't the court pull the abandonment provision outside of the regulation itself because it had not completed notice and comment? In the other, now I'm forgetting, there were so many agencies involved in the, yeah, it hadn't completed notice and comment, so you made a deliberate choice to pull it outside of the regulation and put it in the preamble. You're correct in stating that the court pulled the definition specifically from the text of the regulation, but it did that so that it could retain the discretion to interpret that phrase differently in accordance with the Department of Agriculture's manual, which was changing over time. So specifically in the preamble to the final regulation, the court put the public on notice, and it specifically said on 58 Federal Register 45034, the court and EPA will use the SES, the Soil Conservation Services, Department of Agriculture, provisions on abandonment, thereby ensuring that prior converted cropland, that is abandoned within the meaning of these provisions and which exhibits wetlands characteristics will be considered wetlands, subject to Section 404 regulation. And then on that page and the preceding page in the Federal Register, it talks about the comments that the public made on the use of the abandonment concept. But that could have been in the regulation itself. You didn't have to pull it out. You could have retained discretion and left that in the regulation without shifting it to the preamble, which is not the regulation. The preamble doesn't have force of law. That's true, Your Honor. But again, I would submit that it doesn't matter either way because the court has explained how it was going to be interpreting the term prior converted cropland. In its preamble, in the proposed regulation, the public commented on prior converted cropland and the meaning of abandonment. And then the court explained in the preamble to the final regulation, and this is on page 45033, it specifically said, we believe that consistency with the Department of Agriculture's policy will be best achieved by using the manual, which set forth the definition of prior converted cropland and abandonment, by using the manual in the same manner as Department of Agriculture as a guidance document used in conjunction with other technical guidance and field testing techniques to determine whether an area is- a council, even if it's in a manual or a guidance, under Supreme Court precedence, that doesn't preclude it from being a legislative rule if the field officers don't have discretion to depart from it. And again, if this five-year abandonment thing is a hard line, then it's functioning as a legislative rule, not as guidance that those who are making the determinations have the discretion to depart from or not. Now, I take everything you're saying about the public having had a chance to comment on it, but again, analytically, I'm thinking that goes to harmless error review and not to the question of whether it's a legislative rule or not. I would submit that the court doesn't need to reach the question of whether it's a legislative rule or an interpretive rule in order to affirm the Army Corps' decision here, because the Corps announced how it was going to be interpreting prior converted cropland. I understand, but as your position, I want you to say it matters to how we decide the case, it would matter to how we wrote an opinion. So I want you to state your position. I mean, your position is that it's an interpretive rule, or your position is that it's a legislative rule? Our position is that it is an interpretive rule that has been applied consistently by the Corps since 1990. That's entitled to our deference? That's correct. But if we think it's a legislative rule, your position is that it's subject to harmless error analysis? That is correct because it was subject to notice and comment and has been applied and interpreted consistently since before this regulation was enacted in guidance that was issued in 1990, which is also included in the addendum to the brief. Do your field officers have discretion to say, well, this cropland has only been abandoned, it's been abandoned for six years, but in this instance we'll say it still qualifies for the prior converted cropland exception? Do they have that discretion? I'm not prepared to speak to that, but what I can say and direct this court to is to look at the district court's decision in New Hope. And the reason why I'm sort of hesitant to fully answer this question is because of the New Hope decision, which was a district court decision, which held that a post-regulatory guidance document that changed the definition of prior converted cropland needed to go through notice and comment rulemaking in order to be applied. And the court has interpreted that district court decision as being limited to the district in which it applies. And so my understanding is that the court believes that it can, the court's position is that it can change its interpretation of prior converted cropland without notice and comment because the definition was interpreted in its preamble, not its regulatory text. But there is that district court decision out there that does bind the court, at least within that district. So it's somewhat unclear, and I would hesitate to put the court into a box, especially given the changes in the regulatory landscape that are pending and that I'm not authorized to comment on because they're still pending. There's been no final decision. But it is a difficult question, and that's why I would urge the court to decline to address it because it doesn't need to address this particular question in affirming the court's decision here because the public was on notice of the meaning of prior converted cropland and that it would include, in other words, that prior converted cropland excludes cropland that has been abandoned or that is not farmed for more than five years. I would also say, if the court were to look at the harmless error analysis, that in this situation, it's not even a five-year issue. The wetlands at issue here have not been farmed since 1996, so it's much longer than five years. So there's no sort of question, or this court shouldn't have any question or concern about an arbitrary bright line that's been drawn. I would also submit to the court that the wetlands at issue have returned to full wetlands condition state and that the evidence in the record... There's no contrary evidence in the record to suggest that these are not wetlands and that there is no hydrological connection and that they don't play a significant role. The only thing that Orchard Hill asks this court to do is find that more evidence should have been obtained or that more evidence is required, but the case law simply doesn't support that result here. No court has required, and in fact, the Fourth Circuit and pre-con has held that the Army Corps doesn't actually need to go out and measure the flow rates or quantitatively measure pollution content coming into the wetlands and in water leaving the wetlands. And so for this court to reach the outcome that Orchard Hill would like it to here would mean that it would have to depart from other circuit precedent in the pre-con decision to require more evidence of the Army Corps, and that's just not consistent with Rapanos and, again, not consistent with other courts that have addressed this issue. In meeting the significant evidence, or significant nexus test, the court submitted evidence of similarly situated lands, which under your regulations means acres that are wetlands that are adjacent to the Middle Othean Creek, and you relied specifically on 165 acres. What evidence is there in the record, though, that supports that these 165 acres were actually adjacent to the Middle Othean Creek? To identify the similarly situated wetlands, the court looked at all of the wetlands that were in the same water... in the Middle Othean Creek watershed, which is where these wetlands are located, and it looked specifically at the National... at the Fish and Wildlife Service's National Wetlands Inventory, and that inventory is gathered by looking at soil maps. So wetlands consist of certain types of soils, and so the Fish and Wildlife Service identifies where certain soils are located, and then it goes and looks at aerial survey maps to identify what types of vegetation are at the location, and from there it determines that there are wetlands there or not. Are you referring to Appendix 20? Yes. Can you help me out, please? Where in here does it say that these 165 acres are actually adjacent to the Middle Othean Creek? I believe it is on page 22, but let me look there with you. At the end of the list... Oh, I'm sorry, it doesn't say that. It says... Because one of the questions is do these directly abut, which I'm assuming that means do they directly abut Middle Othean Creek. You're right. And for all but four, it says no. They don't. You're right. And actually at the top of page 20, number three, at the very top of the page it says characteristics of all wetlands adjacent to the tributary, if any. So that's where the term adjacent comes in. But it says if any, adjacent to the wetlands, or adjacent to the tributary, if any. Right. And so the core, this may be where your question is coming from. The core doesn't interpret adjacent to mean abutting. The core interprets adjacent to mean neighboring, in the vicinity of or neighboring, and that's in the guidance at Appendix 271, which is also consistent with the Kennedy decision in Rapanos, I believe at. So if you interpret it as neighboring, what is your evidence that these 165 acres are neighboring? The evidence comes in the form of the National Wetlands Inventory itself. And is there anything on this document at Appendix 20 that would tell me that these wetlands are actually neighboring the tributary? I don't see it. Well, so it's ‑‑ I appreciate your question, and what I would say is that ‑‑ Also, it's entitled, and let me just add this to it, it's entitled National Wetlands Inventory, Tinley Park, Illinois, Quadrangle, which I don't think that limits it to the area we're talking about. So that refers to the map specifically where the information was gathered. But I would ‑‑ Which I think is what you relied on at the district court. Yes. And what we rely on here, it's the basis of the Army Corps' decision. The ‑‑ I would direct this court to look at the discussion on page 37 of the appendix, which says the National Wetlands Inventory map identifies 165 wetlands in the Midlothian Creek watershed, totaling 462.9 acres. And then it talks a little bit more about the Midlothian Creek watershed. Appendix 37? That's correct, in the middle of the page. But that's your report, so I'm just trying to figure out ‑‑ Oh, that's the Army Corps' ‑‑ That's the Corps' report, but where did the Corps get that information? They state it as if it's a fact here, but I'm trying to find out what the backup evidence is. The backup evidence is the National Wetlands Inventory map in the first place. Okay. And that is substantial evidence under the APA. It's evidence that a reasonable mind would accept as adequate to support the conclusion. I would also submit to the court that although the Corps prepared its analysis by looking at the Warmicky wetlands along with all of the other wetlands in the watershed, the Corps independently found that these wetlands alone satisfy the significant nexus standard, and that would be an independent basis for the court to find that there is a significant nexus here. Thank you, counsel. Thank you. Mr. Hadjiantic? This is going to be an exercise in speed talking, but I'll try to go through this quickly. With regard to scientific judgment being greater deference in this case, the government cites the zero zone case decided by this court that significant nexus should be entitled to a higher standard of deference because that's an issue involving scientific or technical questions. Zero zone is not on point here. In that case, the Department of Energy promulgated efficiency standards for commercial refrigeration units. The issue was whether those standards were scientifically and technically sound. Here, by contrast, Gallagher and Henry is not contesting the Corps' scientific or technical determinations, but its failure to follow Justice Kennedy's instructions in the context of the Corps' constitutionally suspect power under the Clean Water Act. That's an issue which courts are uniquely qualified to address. I'd like to quickly go to the biological nexus issue where I left off, and that is that the kind of evidence adduced here with regard to biological nexus is precisely the kind of evidence that was rejected by the Swamp Court in its refusal to defer to the Corps' judgment in connection with migratory birds. With regard to similarly situated sites, there's a list of 165 sites. It's only a list, and there's no additional information. That's precisely the kind of information that the pre-con one court rejected in its decision 633 F. 2nd of 292. We urge the court to consider ways to assemble more concrete evidence before aggregating such a broad swath of wetlands. And I see that I'm out of time. Thank you, Counsel. I'd like supplemental briefs. In 14 days I'll have the clerk's office issue a formal order on the question of whether harmless error review would apply if this is a legislative rule and what the remedy would be, vacate and remand to the agency or just remand. Thank you very much, Counsel. Thank you.